# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

JENNIFER K. MINNEY,

        Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

No. 16-CV-00175-LTS

**REPORT AND RECOMMENDATION**

_____

      The claimant, Jennifer K. Minney (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

      For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I.    *BACKGROUND*

      Claimant was born in 1979. On February 27, 2007, the time claimant alleged she became disabled, she was 28 years old. (AR 16, 158, 165).[1] At the time of the ALJ's first decision on May 18, 2012, she was 33 years old. (AR 27). Claimant was 37 years

_____

[1] "AR" refers to the administrative record below.

old at the time of the ALJ's second decision on June 2, 2016. (AR 158, 1460). Claimant completed high school and had training as a phlebotomist; she had past relevant work experience as a phlebotomist, residential aid, sales clerk, laborer, salesperson, and child monitor. (AR 40, 223-24, 1459). Since the birth of her children, claimant has described herself as a homemaker and homeschools her two minor children, for whom she has served as their primary caretaker. (AR 1454-55).

On February 23, 2010, claimant filed an application for disability benefits, alleging disability beginning on February 27, 2007, due to bipolar disorder and borderline personality disorder. (AR 16, 158, 165). The Commissioner denied claimant's application initially and upon reconsideration. (AR 16, 82, 93). On February 8, 2012, ALJ Eric S. Basse held a video hearing and on May 12, 2012, issued a decision finding claimant was not disabled. (AR 13, 16, 36).

On April 12, 2013, claimant sought judicial review of the ALJ's decision in this Court. (*Minney v. Colvin*, 13-cv-0037-JSS, Doc. 16, at 2). On March 5, 2013, this Court reversed the ALJ's decision and remanded the case for further development of her treating psychiatrist Ali Safdar's opinion and with instructions that the ALJ "provide clear reasons for accepting or rejecting Dr. Safdar's opinions and support his reasons with evidence from the record." (*Id.*, at 23). In reversing the ALJ's decision, this Court noted that it was a "close issue," but found the ALJ: (1) "simply provided a generic and conclusory statement that Dr. Safdar's opinions are 'inconsistent with [Minney's] own reports regarding her activities of daily living,'"; (2) "offer[ed] little or no discussion of Minney's activities of daily living" or explained how those activities are "inconsistent with Dr. Safdar's opinions"; (3) "failed to address, let alone offer even one single reason why Dr. Safdar's opinion on the issue of decompensation should be disregarded" as well as the opinion of Carla Levi, a counselor on Dr. Safdar's staff who also saw claimant;

(4) and improperly relied on "submission of one inconsistent GAF score" as a reason "standing alone" to reject Dr. Safdar's opinions." (*Id.*, at 21-23).

On April 6, 2016, the ALJ held a supplemental hearing. (AR 1441, 1472). On June 2, 2016, the ALJ issued his decision, again denying benefits. (AR 1438). After sixty days, the ALJ's decision became the final agency decision on remand. (AR 1439).

On September 26, 2016, claimant filed a complaint in this Court. (Doc. 1). On March 8, 2017, claimant filed her brief (Doc. 10), and on April 5, 2017, the Commissioner filed her brief (Doc. 12). On April 18, 2017, the Court deemed the case ready for decision and the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the

regulations. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves significant mental or physical activities. "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having the ability and aptitude necessary to perform most jobs. These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant

work.  If the claimant can still perform past relevant work, then the claimant is considered not disabled.  Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it.  A claimant's "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted).  The RFC is based on all relevant medical and other evidence.  The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC.  If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000).  The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled.  At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability.  The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use

was a contributing factor material to the determination of disability. 42 U.S.C. §
423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without
the substance use. *Id.* If the limitations would not be disabling, then the disorder is a
contributing factor material to determining disability, and the claimant is not disabled.

### III.    THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected
in his written decision.

At Step One, the ALJ found claimant had not been engaged in substantial gainful
activity since February 27, 2007. (AR 1443).

At Step Two, the ALJ determined claimant had the following severe impairments:
"obesity, asthma, migraines, mood disorder, major depressive disorder, bipolar affective
disorder, borderline personality disorder, history of generalized anxiety disorder and
posttraumatic stress disorder." (AR 1443-44).

At Step Three, the ALJ concluded that claimant did not have an impairment or
combination of impairments that met or medically equaled in severity one of the listed
impairments. (AR 1446-49).

At Step Four, the ALJ determined claimant's RFC. The ALJ found that "claimant
has the residual functional capacity to perform sedentary work . . . except the claimant
can have no concentrated exposure to pulmonary irritants. (AR 1449). The ALJ found
claimant could "perform simple routine tasks, involving no more than simple work-
related decisions and few workplace changes" and "can have brief and superficial
interaction with the public and coworkers, and occasional interaction with supervisors."
(*Id.*).

Based on this RFC assessment, at Step Five, the ALJ determined that, although
claimant could not perform any past relevant work, based on the testimony of a vocational

expert there were jobs in significant numbers in the local and national economy that the claimant could perform, including addresser, document preparer, and ticket checker. (AR 1459-60). The ALJ concluded, therefore, that claimant was not disabled. (AR 1460).

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..").  "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631).  The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining

whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant argues the ALJ erred in two ways:

1.    The ALJ's Residual Functional Capacity assessment is flawed because the ALJ failed to properly evaluate the work related limitations from treating psychiatrist, Dr. Ali Safdar. (Doc. 10, at 4-24).

2.     The ALJ's residual functional capacity assessment is flawed because it is not supported by substantial medical evidence from a treating or examining source. (Doc. 10, at 25-26).

I will address both of these issues below.  I will start, however, by reviewing the ALJ's findings regarding claimant's daily activities and her credibility because these matters undergirded the basis for this Court's reversal of the ALJ's prior decision and because the findings here influenced the weight the ALJ gave Dr. Safdar's opinions and the ALJ's residual functional capacity assessment.

## A.     Claimant's Daily Activities and Credibility

The ALJ found claimant was not a credible source regarding the intensity, persistence, and functionally limiting effects of her impairments.  (AR 1450).  In assessing claimant's credibility, the Eighth Circuit Court of Appeals identified in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), relevant factors an ALJ should consider.  These include: (1) claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) functional restrictions; (6) claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  The ALJ considered these factors.  (AR 1446-55).

The ALJ examined claimant's daily activities and found them inconsistent with claimant's description of the severity of her impairments.  The ALJ found that claimant was the primary caregiver for her two minor children, cared for the family pets, did laundry, prepared meals for the family, and maintained her own self-care.  (AR 1446-47).  Although claimant testified she forgot to bathe and dress herself when her mental health symptoms were exacerbated and needed her husband to call her and leave her

notes, the ALJ found this inconsistent with medical records showing she appeared for appointments appropriately dress and well groomed, and the fact that she continued to be the trusted primary caregiver for her children. (AR 1447). Regarding claimant's social functioning, the ALJ found her claims of paranoia and fears of social events and men inconsistent with her shopping in stores on a weekly basis, attending play groups and a breast-feeding group, and the relationship she maintains with her husband and her mother-in-law, who helped homeschool claimant's eight-year-old child. (*Id.*). The ALJ further found claimant's alleged memory problems, difficulty handling stress, and becoming distracted by her mental health impairments inconsistent with her daily activities of paying bills, handling bank accounts, sewing, knitting, crocheting, playing games and reading, and inconsistent with medical records that indicate claimant's immediate and remote memory abilities are intact and that she has an average intellectual capability. (*Id.*).

The ALJ found claimant's allegation that she is disabled because of asthmatic problems inconsistent with the medical records which showed she needed a nebulizer and inhaler only during allergy season, treatment notes showing claimant exhibited good cardiopulmonary functions, and records indicating claimant's condition responds quickly to medical treatment. (AR 1450). The ALJ found claimant's assertion that she was disabled because of suffering migraine headaches every two to three weeks inconsistent with medical records that do not reflect complaints of migraines with that frequency and inconsistent with the fact that claimant received little treatment for the condition. (*Id.*).

The ALJ noted claimant had a consistent work history prior to the alleged onset of her disability, which the ALJ noted weighed in her favor. (AR 1454). The ALJ noted, however, that claimant alleged she stopped working due to her impairments, but the record reflects that she left her last job due to concern over her pregnancy and her

intention to become a stay-at-home mother.  (*Id.*).  The ALJ found the fact that claimant has not returned to work since the birth of her first child, and her self-references to being a homemaker during medical visits, inconsistent with her leaving work because of her impairments.  (AR 1454-55).  The ALJ also noted that claimant has reported suffering from her impairments since 2002, but the alleged severity of those impairments was inconsistent with the fact that claimant continued to work until 2007 while allegedly suffering from them.  (AR 1455).

The ALJ also found claimant exhibited poor compliance with taking medications. (AR 1451-52).  An ALJ may conclude that noncompliance with medication detracts from a claimant's credibility.  *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (noting that noncompliance medical treatment undercuts credibility).

In short, I find there was substantial evidence on the record as a whole to support the ALJ's decision to discount the weight given to claimant's description of the intensity, persistence, and functionally limiting effects of her impairments.  It is perhaps telling that claimant does not challenge the ALJ's credibility finding.  The ALJ's finding that claimant lacked credibility in reporting her own symptoms and impairments affected the ALJ's decision regarding the weight to be given to the medical opinions and the ALJ's residual functional capacity assessment.

### B.    *ALJ's Evaluation of the Medical Opinions*

Claimant argues the ALJ erred at Step Four of the analysis when he allegedly did not give proper weight to the opinions of claimant's treating psychiatrist, Ali Safdar. (Doc. 10, at 4-24).  In September 2010, Dr. Safdar opined that claimant was seriously limited but not precluded in her ability to:

> maintain attention for two hours; maintain regular attendance and be
> punctual within customary usual strict tolerances; sustain an ordinary

routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember, and carryout detailed instructions; set realistic goals or make plans independently of others; deal with stress of semi-skilled and skilled work; maintain socially appropriate behavior; and travel to unfamiliar places.

(AR 1335-36, 1456). Dr. Safdar also opined claimant had moderate limitations in activities of daily living, social functioning, and in maintaining concentration, persistence, and pace. (AR 1337, 1456). Dr. Safdar further opined claimant would have four or more episodes of decompensation, each of extended duration, within a 12-month time frame and she would miss work more than four days per month. (AR 1337-38, 1456). Dr. Safdar did not explain in his opinion how he reached the conclusion that claimant would suffer four or more episodes of decompensation a year, or miss more than four days of work per month.

In May 2016, Dr. Safdar opined claimant was seriously limited in her ability to:

understand, remember, and carryout detailed instructions; set realistic goals or make plans independently of others; maintain attention for two-hour segments; maintain regular attendance and be punctual within customary tolerances; maintain socially appropriate behavior; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress.

(AR 2065-2066).  Dr. Safdar again opined that claimant had moderate limitations in activities of daily living, social functioning, and in maintaining concentration, persistence, and pace.  (AR 1456, 2067).  He once again further opined that claimant would have four or more episodes of decompensation, each of extended duration, within a 12-month time frame and that she would miss work more than four days per month.  (AR 1457, 2066-67).  Again, however, Dr. Safdar did not explain in his opinion how he reached the conclusion that claimant would suffer four or more episodes of decompensation a year, or miss more than four days of work per month.

During the 2016 hearing, when the ALJ questioned Dr. Safdar about how he arrived at the conclusion that claimant would miss four days of work per month, he replied that it was the highest number on the form.  (AR 1485).  When the ALJ inquired about the medical basis for that conclusion, Dr. Safdar testified that claimant's "emotional instability, you know not sleeping, too much sleeping, lack of energy, kind of bouncing back and forth, not really coping or functioning day to day and that was my rough estimate."  (AR 1485-86).  Dr. Safdar acknowledged a problem with his notes supporting this conclusion, explaining that "frankly when we see these people, these are just medication management sessions and we really do not do a work assessment or a disability evaluation every time, so a lot of the notes might have some things missing."  (AR 1486).  When the ALJ asked Dr. Safdar to explain the basis for his conclusion that claimant would have multiple episodes of decompensation a year, Dr. Safdar explained:

> She really has not been able to maintain any stability for any significant length of time.  She might do okay for a week or ten days and then might be back either depressed or manic or paranoid or hearing, seeing things and those are the issues that I've been seeing that she really has not been able to function at a sustained level for any significant length of time.  So every day is kind of a different day and a different situation for her.

(AR 1486-87). The ALJ asked Dr. Safdar to reconcile that conclusion with his notes that show her "doing well, feeling fairly well, not too many mood swings." (*Id.*). Dr. Safdar explained that his notes are like "snapshots" of a patient" and that claimant could change from day to day. (AR 1487-88).

Generally, it is for an ALJ to determine the weight to be afforded to the opinions of medical professionals, and "to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). An ALJ is required to give "controlling weight" to a treating-source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (holding that an ALJ must give "substantial weight" to a treating physician, but may discount that weight if the opinion is inconsistent with other medical evidence). An ALJ is not, however, required to explicitly discuss every factor in 20 C.F.R. § 404.1527. *See Molnar v. Colvin*, No. 4:12-CV-1228-SPM, 2013 WL 3929645, at *2 (E.D. Mo. July 29, 2013) ("[A]lthough the ALJ did not explicitly discuss every factor of 20 C.F.R. § 404.1527(c) in evaluating the opinions of Plaintiff's treating sources, the ALJ was not required to do so.") (unpublished) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 1998) (the ALJ does need not discuss every piece of evidence submitted, and the ALJ's failure to discuss specific evidence does not mean that it was not considered by the ALJ)).

As an initial matter, claimant asserts that the ALJ should have given more weight to both her treating psychiatrist Dr. Safdar and her treating counselor, Carla Levi, who worked with Dr. Safdar. Dr. Safdar, as a psychiatrist who saw claimant on a number of occasions between 2010 and 2016, is "an acceptable medical source." (20 C.F.R. § 404.1513(a)). Ms. Levi, as the ALJ noted however, is not an acceptable medical source.

(AR 1457; 20 C.F.R. §§ 404.1513(a); (416.913(a)).  As such, Ms. Levi's opinions were only entitled to consideration, but not great weight.  *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006).  The ALJ did consider Ms. Levi's opinions and found them to be inconsistent with her own records and the rest of the medical evidence in the same way and for the same reasons he found Dr. Safdar's opinions not deserving of great weight. (AR 1457).

Here, the ALJ weighed the opinions of various medical providers, affording some more weight than others.  The ALJ afforded Dr. Safdar's opinions "little weight."  (AR 1456-58).  The ALJ concluded that Dr. Safdar's medical notes and observations were inconsistent with the limitations he found and his conclusion that claimant would have four or more episodes of decompensation within a 12-month time frame and would miss work more than four days per month.  (*Id.*).  As noted, this Court previously reversed the ALJ and remanded this case when the ALJ previously reached the same conclusion because the Court was not satisfied that the ALJ had explained the basis for discounting claimant's treating psychiatrist's opinion.  Thus, the question now before me is whether in the ALJ's new decision he provided an adequate explanation for discounting Dr. Safdar's opinion.  I find the ALJ has fully and adequately explained his basis for discounting the weight he gave to Dr. Safdar's opinion.

The ALJ noted that prior to Dr. Safdar rendering an opinion in 2010, he had only briefly seen claimant on three occasions in that year.  (AR 1456).  Although Dr. Safdar subsequently saw claimant every four to six weeks between 2010 and 2016 (AR 1487), none of these visits were long and most were focused on her medications. (AR 1458, 1486).  Treating physicians are given more weight typically because they are presumed to know more about the patient than nontreating physicians.  *Cf.* 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i) ("Generally, the longer a treating source has treated

you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The relationship Dr. Safdar had with claimant was not the type of long-term, frequent, and close doctor/patient relationship deserving of great weight simply on the ground that Dr. Safdar was claimant's treating psychiatrist. *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (finding ALJ properly discounted weight given to treating physician when "[t]he treatment notes from these sessions do not indicate that Vega had sufficient knowledge upon which to formulate an opinion as to Randolph's ability to function in a workplace[;]never treated Randolph during any period of employment and her treatment notes do not provide any evidence that she even asked Randolph about her prior experience in the workplace or her current ability to maintain employment."). As in *Randolph*, Dr. Safdar never treated claimant during any time of employment and his notes do not reflect that he asked her about her prior work experience or her current ability to work.

The ALJ discounted the weight given to Dr. Safdar's opinion in part because he found it inconsistent with Dr. Safdar's own treatment records. Dr. Safdar's treatment notes from 2010, for example, reflected that claimant was generally doing well on her medication and had normal mental status findings, although there were some periods of fluctuation. (AR 1260, 1259-60, 1311, 1340, 1407-12, 1456, 1458, 2112-18, 2121-22, 2129). Although Dr. Safdar had an explanation for why support was lacking in his notes, the ALJ cannot be found to have erred when relying on a treating physician's notes in assessing the degree to which they are consistent or inconsistent with the doctor's opinion. An ALJ cannot be left to speculate as to what the doctor might have or could have put in his notes. The ALJ also found that Dr. Safdar's opinion was in error when he asserted claimant's highest GAF in the past year was 50 (AR 1333, 1456), because his records showed GAF scores ranging from 58 to 62. (AR 1308, 1313, 1342, 1456, 1458, 2234).

Ultimately, the ALJ found Dr. Safdar's notes to be inconsistent with his opinion of the extreme severity of claimant's impairments. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (holding the ALJ properly discounted the weight given to a treating physician when it was inconsistent with his own treatment notes and other medical opinions); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) ("A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions."); *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (internal citation omitted) (holding that a physician's opinion is entitled to less weight when it is inconsistent with the physician's own findings).

The ALJ also found Dr. Safdar's opinion was not supported by other medical opinions and evidence. An ALJ may discount the weight given to opinions of treating doctors when, as here, the opinions are inconsistent with other medical records. *See, e.g., Michel v. Colvin*, 640 Fed. App'x. 585, 593-94 (8th Cir. 2016) (finding ALJ did not err in giving little weight to physician's opinion when it was contradicted by other acceptable medical sources in the record); *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) ("We conclude that substantial evidence supports the ALJ's determination that [the doctor's] opinion was inconsistent with the treatment record and thus not entitled to controlling weight."); *Beard v. Astrue*, 479 Fed. App'x 24, 25-26 (8th Cir. 2012) (unpublished) (finding it proper for ALJ to discount the weight given to a treating physician's opinion when it was inconsistent with the results of a consulting physician's examination). The ALJ gave significant weight to the opinion of Dr. Barbara Lips, an independent consultative examiner, who found claimant could understand and remember instructions, procedures, and locations of at least moderate complexity and, although Dr. Lips found claimant had some limitations, concluded claimant could perform simple work. (AR 1455). The ALJ also gave significant weight to the opinions of Dr. Scott

Shafer, a non-examining consulting medical source who opined that claimant did not meet or equal a medical listing and she had only mild or moderate restrictions that would not preclude her employment. (AR 1455-56). The ALJ also gave significant weight to Dr. Sandra Davis, another non-examining consulting medical source, who also found claimant had some mild and moderate limitations. (AR 1457).

The ALJ also discounted the weight given to Dr. Safdar's opinion because its inconsistency with other medical records and opinions led the ALJ to conclude Dr. Safdar based his opinions on claimant's subjective complaints. As noted, the ALJ found claimant was not credible in describing the severity and persistence of her impairments. The ALJ was not bound to credit opinions resting on a claimant's unsupported claims, particularly when they were contradicted by other evidence. Indeed, a physician's opinion is not entitled to any special weight where, as here, the opinion is based largely on the subjective statements by the claimant and is not supported by other evidence. *See Kirby*, 500 F.3d at 709 ("It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians . . .. The ALJ was entitled to give less weight to Dr. Harry's opinion, because it was based largely on Kirby's subjective complaints rather than on objective medical evidence.") (citation omitted); *Harker v. Colvin*, No. 15-cv-2032-CJW, 2016 WL 3440608, at *7 (N.D. Iowa June 20, 2016) (holding that the ALJ properly discounted the weight afforded to a physician's opinion when it was based largely on the claimant's subjective statements). Where a claimant is incredible regarding his impairments, an ALJ may properly discount the weight given to providers' opinions which are based on the claimant's statements. *Julin v. Colvin*, 826 F.3d 1082, 1088-89 (8th Cir. 2016).

The ALJ also discounted the weight given to Dr. Safdar's opinion because it was inconsistent with claimant's daily activities. As noted, claimant was the primary

18

caregiver to her two minor children and participated in individual and group activities that involved a level of social interaction and attention and concentration that were inconsistent with the severe limitations Dr. Safdar opined were present. *See Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014) (holding that an ALJ may discount the weight given to a treating physician's opinion when it is inconsistent with the claimant's daily activities); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming an ALJ's finding of no disability where the claimant "engaged in extensive daily activities," testifying "that she took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals for them, did housework, shopped for groceries, and had no difficulty handling money").

Claimant argues the ALJ improperly considered claimant's GAF scores in discounting the weight afforded to Dr. Safdar's opinions. (Doc. 10, at 19, 21-24). The ALJ referenced GAF scores in relation to evaluating the inconsistencies of Dr. Safdar's reporting of GAF scores, and more generally in summarizing claimant's medical records. The Eighth Circuit Court of Appeals has concluded that GAF scores have "little value." *See Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (8th Cir. 2016) (quoting *Jones v. Astrue,* 619 F.3d 963, 973-74 (8th Cir. 2010) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.")). Nevertheless, an ALJ should consider them along with all of the other medical evidence. (Doc. 12-1; SSR: GLOBAL ASSESSMENT OF FUNCTIONING EVIDENCE IN ADJUDICATION, AM-13066-REV (Oct. 14, 2014). Here, the ALJ considered the GAF scores, but did not place improper reliance on them or reject Dr. Safdar's opinions on the basis of GAF scores.

Claimant argues the ALJ erred because to the extent he discounted Dr. Safdar's opinions, and because of claimant's noncompliance with medication and substance abuse, the ALJ failed to consider the possibility that claimant's noncompliance and substance abuse were the products of her mental illness. (Doc. 10, at 24). In reviewing the medical record, the ALJ noted that many of claimant's hospital admissions occurred when she was not taking her medications or during relapses in using alcohol. (AR 1451). The ALJ further noted other medical records showing that claimant's symptoms became more severe when she was noncompliant with her medications and/or had relapsed in her use of alcohol. (AR 1452). The ALJ did not specifically address whether claimant's failure to comply with her medications or her relapse of alcohol use was the product of her mental illness.

Claimant implies that her mental illness caused her noncompliance with her medications, citing to studies reflecting a connection between mental illness and noncompliance in the use of medications. (Doc. 10, at 24-25). Claimant does not, however, point to anything in the record showing that claimant's noncompliance was the product of her mental illness. Claimant has the burden of demonstrating she is disabled through step four. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citation omitted). Plaintiff relies on this Court's decision in *Horst v. Colvin*, No. 15-cv-3153-CJW, 2016 WL 6436565, at *4 (N.D. Iowa Oct. 28, 2016) (citing *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009)). (Doc. 10, at 24). In *Horst*, however, the Court noted that the record was devoid of evidence linking the claimant's mental illness to the noncompliance with taking medication and indicated that it would have found against claimant on the issue because it was claimant's burden to show such evidence, but because the Court remanded the case on other grounds, it instructed the ALJ to develop the record in this area as well. *Pate-Fires* is distinguishable from this case precisely because the record in

that case showed a direct link between the claimant's mental illness and his noncompliance with medication. *Pate-Fires*, 564 F.3d at 945-46. Claimant cannot rely on speculation here to suggest her noncompliance derived from her mental illness. More importantly, the ALJ's conclusion in determining the weight to give Dr. Safdar's opinion regarding the severity of claimant's limitations was not erroneous for considering claimant's noncompliance as an explanation for the variation in the severity of her symptoms. Impairments that respond well to treatment and medication are not consistent with a finding of total disability. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.") (quotation omitted).

In summary, I find there is substantial evidence in the record as a whole for the weight the ALJ afforded Dr. Safdar's opinions.

### C.    *The Residual Functional Capacity Determination*

Claimant argues the ALJ erred in determining claimant's residual functional capacity because it was not supported by substantial medical evidence from a treating source or even an examining source. (Doc. 10, at 25-26). Claimant provided no analysis or explanation for why she believes the ALJ's RFC is flawed. Rather, after reciting a page of boilerplate law, claimant provides a single sentence of argument: "Given the consistent opinions of Dr. Safdar, Ms. Levi, and Dr. Lips, the five year old opinions from the non-examining state agency psychological consultants are not substantial medical evidence." (Doc. 10, at 26). Claimant cites the holding in *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), for the proposition that an ALJ errs if the ALJ relies solely "on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion" about a claimant's RFC. (Doc. 10, at 26).

An ALJ must determine a claimant's residual functional capacity based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (alterations in original). Here, I find the ALJ properly accounted for claimant's impairments in structuring claimant's RFC limitations and the RFC assessment is supported by substantial evidence on the record as a whole. This included consideration of claimant's treatment records; the opinions of a consulting, examining physician; the opinions of consulting, non-examining physicians; and records from hospitals and other care providers. *Nevland* does not require reversal where, as here, the ALJ had the benefit of medical evidence from examining and treating sources and did not simply rely on the opinions of non-examining consulting physicians. *See Sneller v. Colvin*, No. C12-4113-MWB, 2014 WL 855618, at *9 (N.D. Iowa Mar. 5, 2014) (unpublished) (holding *Nevland* did not compel reversal because "the ALJ had medical evidence from a treating source"). Nor was the ALJ bound to accept the treating physician's opinions in determining the claimant's RFC. An ALJ may disregard that portion of a treating physician's opinions that the ALJ has found to be inconsistent with and unsupported by the medical record as a whole. *Craig v. Apfel*, 212 F.3d 433, 436-47 (8th Cir. 2000). It is not for this court to "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555, or "review the factual record de novo." *Roe*, 92 F.3d at 675 (internal quotation and citation omitted).

Accordingly, I find the ALJ did not err and that substantial evidence in the record as a whole supports the ALJ's residual functional capacity determination.

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 15th day of May, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa