# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

JENNIFER K. MINNEY,

        Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

No. C16-175-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.  INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable C.J. Williams, Chief United States Magistrate Judge. *See* Doc. No. 14. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Jennifer K. Minney's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the Act). *See* 42 U.S.C. §§ 401-434; 42 U.S.C. §§ 1381-1385.

Minney has filed timely objections (Doc. No. 15) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.  APPLICABLE STANDARDS

### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.    *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).


### III.    THE R&R

Minney applied for DIB and SSI on February 23, 2010, alleging she became disabled on February 27, 2007, due to bipolar disorder, borderline personality disorder and various physical impairments.  Doc. No. 14 at 2 (citing Administrative Record (AR) 16, 158, 165); AR 222.  Minney previously sought judicial review of a May 18, 2012, decision by the Administrative Law Judge (ALJ).  On March 5, 2014, this court reversed and remanded the decision for further development of the opinion of Minney's treating psychiatrist, Ali Safdar, M.D.  The ALJ was instructed to "provide clear reasons for accepting or rejecting Dr. Safdar's opinions and support his reasons with evidence from the record."  Doc. No. 14 at 2 (citing *Minney v. Colvin*, 13-cv-0037-JSS, Doc. No. 16 at 2).

The ALJ held a supplemental hearing on April 6, 2016, during which Minney and Dr. Safdar testified.  AR 1472-1514.  On June 6, 2016, the ALJ again denied benefits.[1] Minney again sought judicial review of the ALJ's decision.  Minney argues the ALJ erred in determining that she was not disabled because:

---

[1] The ALJ found the following additional severe impairments at Step Two: obesity, asthma, migraines, mood disorder, bipolar affective disorder, major depressive disorder, borderline personality disorder, history of generalized anxiety disorder and posttraumatic stress disorder. *See* AR 1443-44.

1.  The ALJ failed to properly evaluate the work-related limitations from her treating psychiatrist, Dr. Safdar, in calculating her residual functional capacity (RFC).

2.  The RFC assessment is not supported by substantial medical evidence from a treating or examining source.

*See* Doc. No. 10. Judge Williams addressed each argument in his R&R.

With regard to Minney's RFC, the ALJ found she could perform sedentary work, but could have no concentrated exposure to pulmonary irritants. AR 1449. She could perform simple routine tasks, involving no more than simple work-related decisions and few workplace changes. She could also have brief and superficial interaction with the public and coworkers, and occasional interaction with supervisors. *Id.*

Judge Williams first considered the ALJ's evaluation of Minney's daily activities and credibility, as he found these influenced the weight the ALJ assigned to Dr. Safdar's opinions and the RFC assessment. The ALJ found Minney was not credible regarding the intensity, persistence and functionally limiting effects of her impairments. *See* Doc. No. 14 at 9. In evaluating the *Polaski*[2] factors, the ALJ found that Minney's daily activities were inconsistent with the level of severity she described for her impairments. Specifically, the ALJ noted that Minney cared for her two minor children and the family pets, did laundry, prepared meals for the family and maintained her own self-care. *Id.* She also attended play groups and a breastfeeding group while maintaining relationships with her husband and mother-in-law, who helped homeschool Minney's eight year-old child. *Id.* at 10. Finally, he noted that she paid bills, handled bank accounts, sewed, knitted, crocheted, played games and read. *Id.* The ALJ found these activities were inconsistent with Minney's allegations that she had difficulties caring for herself, social functioning, handling stress and becoming distracted.

---

[2] *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)

With regard to her prior work history, the ALJ discredited Minney's assertion that she stopped working due to her impairments. *Id.* During her pregnancy she indicated that she intended to become a stay-at-home mother and did not return to work after the birth of her first child. *Id.* at 10-11. Moreover, while Minney alleged she had suffered from her impairments since 2002, she continued to work until 2007. *Id.* at 11. Finally, the ALJ noted Minney was not compliant with her medication. *Id.* Judge Williams concluded there was substantial evidence in the record as a whole to support the ALJ's credibility determination. Minney does not challenge this aspect of the ALJ's decision.

With regard to the medical opinion evidence, Minney argues the ALJ did not give proper weight to the opinion of her treating psychiatrist, Dr. Ali Safdar. In September 2010, Dr. Safdar found serious limitations in 14 areas and moderate limitations in three areas. *Id.* at 11-12. He concluded Minney would have four or more episodes of decompensation, each of extended duration, within a 12-month time frame and would miss work more than four days per month. *Id.* at 12. In March 2016, he found serious limitations in nine areas and the same previous moderate limitations in three areas. He also found Minney would continue to have the four or more episodes of decompensation in a year and four or more absences from work per month. *Id.* at 13.

The ALJ asked Dr. Safdar how he arrived at the conclusion that Minney would miss four or more days of work per month and he replied that it was the highest number on the form. *Id.* He attributed it to Minney's "emotional instability, you know not sleeping, too much sleeping, lack of energy, kind of bouncing back and forth, not really coping or functioning day to day." *Id.* (citing AR 1485-86). He explained that when he sees patients for medication management, he does not perform a work assessment or a disability evaluation every time, so many of the notes have information missing. *Id.* Regarding the multiple episodes of decompensation per year, Dr. Safdar explained that Minney had not been able to maintain stability for any significant length of time. While she might do well for a week or ten days, she would go back to being either depressed, manic, paranoid or seeing and hearing things. He stated that she has not been able to

function at a sustained level for any significant length of time and that every day is a different day and different situation for her. *Id.* (citing AR 1486-87). With regard to certain notes that indicated Minney was doing well and not having too many mood swings, he explained those notes are like "snapshots" and that Minney's symptoms could change from day to day. *Id.* at 14.

The ALJ assigned Dr. Safdar's opinions "little weight," concluding that his medical notes and observations were inconsistent with the limitations he assigned. *Id.* at 15 (citing AR 1456-58). Judge Williams acknowledged that Dr. Safdar is an acceptable medical source and that this court previously remanded this case after the ALJ reached the same conclusion about Dr. Safdar's opinions. As noted above, in the previous case Judge Scoles found that the ALJ had failed to explain the basis for discounting Dr. Safdar's opinions. Therefore, Judge Williams considered whether the ALJ provided an adequate explanation on remand for again giving Dr. Safdar's opinions little weight, concluding that he did.

Specifically, Judge Williams referenced the fact that prior to his 2010 opinion, Dr. Safdar had seen Minney on only three occasions that year. While he saw Minney every four to six weeks from 2010 to 2016, none of those visits were long and most were focused on her medications. Judge Williams reasoned that Dr. Safdar's treating relationship with Minney was "not the type of long-term, frequent and close doctor/patient relationship deserving of great weight" simply because Dr. Safdar was Minney's treating psychiatrist. He noted that Dr. Safdar had never treated Minney during any period of employment and his treatment notes did not reflect that he had asked about her prior work experience or current ability to work.

Judge Williams discussed the ALJ's finding that Dr. Safdar's opinion was inconsistent with his own treatment records. As an example, he noted that Dr. Safdar's treatment notes from 2010 indicated that Minney was generally doing well on her medication and had normal mental status findings, although there were periods of fluctuation. Regarding Dr. Safdar's explanation for why his notes lacked further

information, Judge Williams stated that the ALJ could not be found to have erred "when relying on a treating physician's notes in assessing the degree to which they are consistent or inconsistent with the doctor's opinion." *Id.* at 16. He added that the ALJ could not be expected to speculate as to what the doctor could have put in his notes. *Id.* As to specific inconsistencies, the ALJ found that Dr. Safdar's opinion that Minney's highest GAF score in the past year was 50 was inconsistent with his notes showing that her GAF scores ranged from 58-62. *Id.*

Judge Williams then analyzed the ALJ's finding that Dr. Safdar's opinion was not supported by other medical opinions and evidence. He noted the ALJ gave significant weight to the opinion of Dr. Barbara Lips, an independent consultative examiner who found Minney had fewer limitations. *Id.* at 17. The ALJ also gave significant weight to the opinions of Dr. Scott Shafer, a non-examining medical source, and Dr. Sandra Davis, another non-examining medical source. Both sources found that Minney had only mild or moderate limitations. *Id.* at 18.

Next, Judge Williams considered the ALJ's finding that Dr. Safdar's opinion was entitled to little weight because it was based on Minney's subjective complaints. The ALJ found that Minney was not credible in describing the severity and persistence of her impairments. Judge Williams stated the ALJ was not bound to credit Dr. Safdar's opinion to the extent that it relied on Minney's unsupported claims, particularly when those claims and Dr. Safdar's opinion were contradicted by other evidence. *Id.*

Judge Williams also discussed the ALJ's finding that Dr. Safdar's opinion was inconsistent with Minney's daily activities. The ALJ reasoned that Minney was the caregiver of two minor children and participated in individual and group activities that involved levels of social interaction and attention and concentration that were inconsistent with the severe limitations identified by Dr. Safdar. *Id.* at 18-19.

Judge Williams then addressed Minney's argument that the ALJ improperly considered her GAF scores in discounting Dr. Safdar's opinion. He concluded that the

ALJ considered the GAF scores as he was obligated to do, but did not improperly rely on them or reject Dr. Safdar's opinions based on them. *Id.* at 19.

Minney also argued the ALJ erred because he did not consider whether Minney's noncompliance with medication and substance abuse were related to her mental illness. Judge Williams noted that Minney failed to point to anything in the record showing that her noncompliance was related to her mental illness and that she has the burden of proving she is disabled at step four. He distinguished the cases Minney relies on and noted that noncompliance with medication was an appropriate reason for discounting Dr. Safdar's opinion regarding the severity of Minney's limitations. Judge Williams concluded that substantial evidence in the record as a whole supported the ALJ's decision to give less than controlling weight to Dr. Safdar's opinion.

Minney's second argument focused on the alleged lack of substantial medical evidence from a treating or examining source in support of the ALJ's RFC assessment. She argued that the five-year-old opinions from the non-examining state agency psychological consultants were not substantial evidence in the face of consistent opinions from Dr. Safdar, her therapist, Carla Levi, LCSW, and Dr. Lips. Judge Williams concluded the ALJ properly accounted for Minney's impairments with the limitations provided in the RFC and that the RFC is supported by substantial evidence in the record as a whole. Judge Williams noted that the RFC is based on consideration of Minney's treatment records, the opinions of a consulting, examining physician, the opinions of consulting, non-examining physicians and records from hospitals and other care providers. He concluded the ALJ did not simply rely on the opinions of non-examining consulting physicians, but considered the medical evidence from examining and treating sources as well. He stated the ALJ was not bound to accept the treating physician opinions and explained that the court may not reweigh the evidence or conduct a de novo review of the factual record. For these reasons, Judge Williams concluded the ALJ's RFC is supported by substantial evidence in the record as a whole.

## IV.    DISCUSSION

Minney objects to Judge Williams' analysis of each of the issues discussed above. As such, I will conduct a de novo review. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). The issues essentially allege that the ALJ failed to properly evaluate the opinion of her treating psychiatrist, Dr. Safdar, by ignoring the evidence that supported his opinion and relying on incomplete evidence from non-examining psychologists. She alleges the following specific errors in the R&R:

A.    The R&R notes that Dr. Safdar saw Minney only three times in 2010 before giving his first opinion. This ignores the fact that Dr. Safdar saw Minney at least 10 times prior to 2010. Altogether, he saw her more than three dozen times, including hospitalizations in December 2010, July 2011, December 2011 and November 2014.

B.    The R&R asserts that Dr. Safdar never treated Minney during any period of employment. However, Minney worked in 2005 and 2006 and Dr. Safdar treated her during this time.

C.    The R&R states Dr. Lips' report supports the ALJ's decision even though it could also be read to support Dr. Safdar's opinion. Levi's opinion is also consistent with Dr. Safdar's opinion.

She also makes the following additional arguments concerning the ALJ's alleged errors:

D.    The ALJ erred by concluding Dr. Safdar did not have an adequate basis for assessing Minney's condition. While she admits that may have been the case in 2010, by 2016 he had seen her more than three dozen times. She asserts the ALJ erred by relying on three psychologists, only one of whom ever examined Minney and none of whom reviewed her records after 2010.

E.    The ALJ's finding that Dr. Safdar's and Levi's opinions were inconsistent with the medical records is not supported by substantial evidence given that they, in addition to Dr. Lips, are responsible for the majority of the medical records. She points out that these opinions are not contradicted by any examining source.

F.    The ALJ gave insufficient weight to the fact that she has been hospitalized six times in six years, her cutting and self-destructive

behavior, her daily activities that are consistent with Dr. Safdar's opinion, her GAF scores, her need for assistance in caring for her children and her noncompliance with medication as a symptom of her mental illness.

I will address each of Minney's arguments below.

## A.     *Duration of Dr. Safdar's Treating Relationship*

First, with regard to the number of times Dr. Safdar saw Minney, the ALJ stated:

although Dr. Safdar has a treating relationship with the claimant, the record reveals that he had only seen the claimant for 3 medication visits – in March, June, and August 2010, prior to his completion of his Medical Source Statement.  As a result, the treating relationship had not been of long enough duration for Dr. Safdar to have obtained a longitudinal picture of the claimant's condition.

AR 1456.  As Minney points out, Dr. Safdar saw Minney several times prior to 2010. *See* AR 604 (July 2003); AR 701 (April 2004); AR 793 (July 2004); AR 807 (same); AR 878 (same); AR 949 (September 2004); AR 1058 (February 2005); AR 1081 (March 2006); AR 1117 (same); AR 1259 (March 2010); AR 1340 (August 2010); AR 2115 (March 2005); AR 2131 (August 2010); AR 2132 (June 2010).  While there does appear to be a gap in his treatment from 2006 through 2010, Dr. Safdar's treating relationship with Minney did extend beyond three visits, and therefore, I find this is not a good reason for giving his 2010 opinion little weight.  However, because the ALJ provided additional reasons for not adopting Dr. Safdar's 2010 opinion, this objection is not dispositive.

## B.     *Treatment During Period of Employment*

Minney argues the R&R incorrectly states that no treating source treated Minney during any period of employment.  *See* Doc. No. 14 at 16.  This reason was provided by Judge Williams in his R&R as evidence supporting the ALJ's decision rather than a reason the ALJ cited for giving Dr. Safdar's opinions less weight.  As Minney points out, it appears Dr. Safdar did treat Minney in 2005 and 2006 when she was employed.  *See* AR

1075, 1082.  However, these notes do not provide much information regarding work-related limitations.  Nonetheless, I will disregard this part of the R&R as evidence supporting the ALJ's decision.

## C.    *Dr. Lips' Opinion*

Minney also disagrees with the R&R's characterization of Dr. Lips' report as supporting the ALJ's decision.  Judge Williams noted the ALJ gave significant weight to the opinion of Dr. Barbara Lips, an independent consultative examiner, "who found claimant could understand and remember instructions, procedures, and locations of at least moderate complexity and, although Dr. Lips found claimant had some limitations, concluded claimant could perform simple work."  Doc. No. 14 (citing AR 1455).  Minney disagrees that Dr. Lips concluded Minney could work.  Dr. Lips concluded the following regarding Minney's mental limitations on work-related activities:

> Ms. Minney appears able to remember and understand instructions, procedures, and locations of at least moderate complexity.  She appears able but likely to be inconsistent in maintaining attention, concentration, and pace in order to carry out instructions at a level of expectation.  She would be somewhat impaired in being able to interact appropriately with supervisors, coworkers, and the public.  She appears to have some difficulty with exercising good judgment, and she may have some difficulty adjusting to changes in the workplace.

AR 1284.  The ALJ gave this opinion "significant weight to the extent it supports a finding that the claimant is capable of performing simple work requiring limited social interaction and few work changes."  AR 1455.  Minney is correct that Dr. Lips did not conclude Minney could perform "simple work" in those direct words.  Nonetheless, the ALJ found that her opinion supported such a finding.

Minney argues that more weight should have been given to Dr. Lips' conclusion that Minney's inconsistent ability to maintain attention, concentration and pace in order to carry out instructions would prevent her from performing "at a level of expectation."  AR 1284.  She argues this is consistent with Dr. Safdar's opinion and that the ALJ failed

to cite evidence for disregarding this part of her opinion. The ALJ stated that "[f]urther restrictions are not supported by the evidence of record as the records do not document significant deficits in attention or concentration." AR 1455.

I agree with Minney that Dr. Lips' opinion is vaguely written such that it could be read to support either the ALJ's decision or Dr. Safdar's opinion. However, it is not my role to reweigh the evidence. *See Vester*, 416 F.3d at 889 ("we consider all of the evidence that was before the ALJ, but we do not re-weigh the evidence, and we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence."). I must consider whether the ALJ's decision is supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (citing *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994)). If, after reviewing the record, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings, we must affirm the decision of the Secretary." *Id.* (citing *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)) (internal quotations omitted).

With regard to Minney's limitations in attention and concentration, the ALJ concluded she had moderate difficulties with regard to concentration, persistence or pace. He cited evidence that Minney makes impulsive decisions when handling money, has problems handling stressful situations and has the tendency to become distracted by paranoia and hallucinations. AR 1447. He noted that the medical record demonstrates her immediate and remote memory abilities are intact and she has average intellectual capability. *Id.* Minney reported she was able to perform simple tasks such as paying bills, counting change and handling bank accounts. She also enjoyed participating in concentration-oriented activities such as sewing, knitting, crocheting, playing games and reading. She reported no problems handling written or spoken instructions. As for the medical evidence, Dr. Safdar noted in his 2010 opinion that Minney's ability to maintain attention for two hours at a time was seriously limited, but not precluded. AR 1335. He

found she had moderate limitations in maintaining concentration, persistence or pace. *See* AR 1337. Levi also found moderate limitations in 2010. AR 1374.

Dr. Safdar's answers to medical interrogatories (dated March 2, 2016) stated Minney had marked difficulties in maintaining concentration, persistence or pace. AR 1992. He cited "Exhibit 7 and 11" in support, which appear to reference questions 7 and 11 from his 2010 medical opinion. *Id.* His 2016 opinion (dated March 9, 2016), however, states she has moderate limitations in this same area. AR 2067. Dr. Davis found her ability to maintain attention and concentration for extended periods was moderately limited. AR 1345. Dr. Shafer similarly concluded that she had moderate limitations in maintaining concentration, persistence or pace. *See* AR 1296. At a mental status examination in 2012, her attention span and concentration were noted to be normal. AR 2142. During an October 2009 hospitalization, her concentration was noted to be "good" on admission, *see* AR 1194, then "poor," *see* AR 1166, then "good" on discharge. AR 1191-92. In February 2009 and April 2009, her concentration was deemed "fair." AR 1180, 1188.

The only other references to concentration and attention in the record are from Minney and her husband, which the ALJ discredited. The record as a whole supports moderate limitations in these areas, which the ALJ incorporated into the RFC. *See* AR 1449 (providing for "simple routine tasks, involving no more than simple work-related decisions and few workplace changes"). This objection is overruled.

### D.    *Non-Examining State Agency Consultants*

Minney's next complaint is that the ALJ weighed the opinions of state agency psychological consultants who reviewed medical records over the opinions of her treating providers, Dr. Safdar and Levi. She notes that the state agency psychological consultants also did not review any medical records after 2010 when additional medical records were submitted on remand. On remand, the ALJ was instructed to "provide clear reasons for accepting or rejecting Dr. Safdar's opinions and support his reasons with evidence from

the record." AR 1565. He was also instructed to recontact Dr. Safdar in order to clarify his opinions on any undeveloped crucial issues. *Id.* While it was certainly appropriate for the ALJ to accept additional medical records to ensure the administrative record was fully and fairly developed, the ALJ was not required to submit those records for review by the state agency psychological consultants unless he found that the records could change the consultants' opinions. As the Third Circuit Court of Appeals has explained:

> because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]*. . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96-6p (July 2, 1996).

*Chandler v. Commissioner of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (emphasis in original). The same reasoning would apply to the consultants' findings regarding the severity of limitations. The regulation does not suggest that an ALJ must obtain additional medical opinions from the state agency consultants under the circumstances present here.

In this case, the ALJ summarized the medical evidence submitted after remand. He noted that from January to May 2011 Minney had normal mental status examinations and GAF scores ranging from 53 to 58. AR 1453. In July 2011, she was admitted to the hospital for suicidal ideation but quickly stabilized once her medications were restarted. *Id.* She was stable until November 2011, when she was admitted again. *Id.* Minney was then stable from December 2011 to November 2014, when she suffered an alcohol relapse and required admission. *Id.* While she had issues with sleep and mood, particularly during her second pregnancy, her mental status examinations were generally unremarkable. Her GAF scores also ranged from 56 to 63 and her mental symptoms were noted to be asymptomatic in multiple clinical notes. *Id.* at 1453-1454.

Minney attended St. Luke's Chemical Dependency Services until January 2015 and reported doing fairly well at her follow up appointments in March and April 2015. *Id.* at 1454. She reported no extreme mood swings or psychotic symptoms and displayed good insight and judgment. Her mental health treatment has been inconsistent since April 2015. *Id.* She was hospitalized in January 2016 related to noncompliance with medication. She was doing fair in February 2016 with no reports of psychotic episodes or suicidal ideation. *Id.* In sum, Minney was hospitalized four times over the course of seven years (2010 through 2017). When the state agency consultants reviewed her records in June, September and October 2010, Minney had been hospitalized 10 times in eight years (2002 through 2010). *See* AR 1549-1552 (summarizing Minney's hospitalizations). Aside from the hospitalizations, the medical evidence of record indicates that Minney's symptoms have improved or remained stable, rather than worsened. As such, the ALJ did not err in failing to submit the additional records to the state agency consultants for additional opinions. This objection is overruled.

### E.    *Weighing of Medical Evidence*

With regard to the ALJ's decision to give greater weight to the state agency consultants rather than her treating sources, Minney argues that the treating source opinions are not contradicted by any examining source and that they cannot be inconsistent with the medical records because her treating sources are responsible for producing the majority of the medical records. Moreover, she argues that the record, at most, is deficient in documentation, and that Dr. Safdar offered a reasonable explanation regarding why the limitations identified in his opinion did not similarly appear in his treatment notes. *See* AR 1486 ("these are just medication management sessions and we really do not do a work assessment or a disability evaluation every time, so a lot of the notes might have some things missing."). In other words, Minney argues there is a difference between his opinion being inconsistent with treatment notes and not being fully supported by the record. Based on Dr. Safdar's testimony regarding the purpose of his

examinations, she argues the latter deficiency is not a good reason for discrediting his opinion.

The record consists of opinions from two treating sources – Dr. Safdar and Levi. While Levi is not an acceptable medical source, she is an "other medical source" and the ALJ must consider the factors described in SSR 06-3p[3] in considering how much weight to give her opinion. The ALJ did not explicitly discuss those factors but found Levi's opinion to be inconsistent with other evidence in the record. He also cited several of her treatment notes containing GAF scores that indicated mild to moderate symptoms. AR 1457. With regard to Levi's opinion, he noted that she was not an acceptable medical source and her opinion regarding four or more episodes of decompensation during a 12-month period and four absences per month was not consistent with the overall evidence of record, including her own progress notes showing unremarkable mental status examinations and GAF scores. *Id.* The ALJ concluded that the differences between Levi's treatment notes and opinion suggested that Levi relied heavily on Minney's subjective reports of symptoms and limitations, which the ALJ found incredible. *Id.* Levi otherwise found moderate limitations in activities of daily living, social functioning and maintaining concentration, persistence or pace. *Id.*

With regard to Dr. Safdar's 2016 opinion, the ALJ similarly gave little weight to his conclusion that Minney would experience four or more episodes of decompensation in a 12-month timeframe and would miss work more than four days per month. AR

---

[3] These factors include:
- How long the source has known and how frequently the source has seen the individual
- How consistent the opinion is with other evidence
- The degree to which the source presents relevant evidence to support an opinion
- How well the source explains the opinion
- Whether the source has a specialty or area of expertise related to the individual's impairment(s)
- Any other factors that tend to support or refute the opinion

*See Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007) (discussing SSR 06-3p).

1458. Dr. Safdar otherwise identified moderate limitations in activities of daily living, social functioning and maintaining concentration, persistence or pace. AR 2067. The ALJ concluded that the extreme limitations Dr. Safdar provided in his opinion were inconsistent with his own treatment notes. AR 1458. While Dr. Safdar testified that Minney's stabilized periods were short lived and she could not sustain normal functioning, his medical records showed good mental status examinations and high GAF scores, despite reports of fluctuating symptoms. *Id.* For these reasons, the ALJ gave little weight to Dr. Safdar's 2016 opinion and his testimony.

The record also contains opinions from two non-treating state agency psychological consultants – Dr. Shafer and Dr. Davis – and one opinion from a consultative examiner – Dr. Lips. Dr. Shafer performed a psychiatric review technique in June 2010. He concluded Minney would have mild limitations in activities of daily living, moderate limitations in maintaining social functioning and concentration, persistence or pace and no episodes of decompensation of extended duration in evaluating the "B" Criteria of the Listings. AR 1296. The ALJ found his opinion was entitled to significant weight because it was consistent with the RFC and with the overall evidence of record documenting Minney's improvement with treatment and medication, along with her admitted activities of daily living. *See* AR 1456. The fact that Dr. Shafer's opinion is consistent with the ALJ's own opinion (the RFC) is not a good reason for giving Dr. Shafer's opinion greater weight. However, consistency with the medical records and Minney's admitted daily activities are good reasons and supported by substantial evidence in the record as a whole.

Dr. Davis performed a mental RFC assessment and psychiatric review technique in October 2010. Dr. Davis' mental RFC assessment identified only moderate limitations. *See* AR 1345-48. Her evaluation of the "B" Criteria of the Listings was identical to Dr. Shafer's evaluation. *See* AR 1359. The ALJ gave her opinion significant weight finding that it supported the RFC, was consistent with the overall evidence documenting Minney's improvement with treatment and medication and was consistent

with her admitted daily activities. AR 1457. Again, the consistency with the ALJ's own RFC is not a good reason for giving this opinion significant weight, but the other reasons are good reasons that are supported by substantial evidence in the record as a whole.

With regard to Dr. Lips' May 2010 opinion, the ALJ gave it significant weight regarding Minney's ability to perform simple work requiring limited social interaction and few work place changes. AR 1455. He found that additional restrictions (such as significant deficits in attention or concentration) were not supported by the record. Dr. Lips provided only a narrative of Minney's limitations as opposed to a checklist form completed by all other medical sources. *See* AR 1284.

The differences between the treating source and non-treating source opinions center on (1) episodes of decompensation and frequent absences from work and (2) the severity of Minney's limitations with concentration, persistence or pace. As for the repeated episodes of decompensation (each of extended duration), the objective evidence does not support the treating source findings. While Minney has had multiple hospitalizations, none of them meet the regulatory definition. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(4) (explaining that repeated episodes of decompensation, each of extended duration means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks"). Therefore, the ALJ did not err by giving little weight to this aspect of the treating opinions.

As for the frequent absences from work, the non-treating state agency consultants did not provide opinions on how many times per month Minney could be expected to be absent from work. Dr. Davis acknowledged Dr. Safdar's finding on this issue but noted the record did not contain evidence of any outside work after Minney's pregnancy to document absences. AR 1347. However, in acknowledging some evidence of problems with attendance, being distracted by others and her ability to handle more detailed tasks and travel and in unfamiliar places, Dr. Davis changed the mental RFC assessment to accommodate these limitations. *Id.* Given that Dr. Safdar would only see Minney every four to six weeks (AR 1407-12) and Levi would see her every two to four weeks (AR

19

1414-37), it is difficult to assess Minney's ability to attend work on a daily basis. It appears she quit or lost previous jobs due to hospitalizations and adjustments to medications afterwards. *See* AR 291 ("I usuall[y] lose a job because I'm so confused and sleepy after bein[g] in the hospital."). Given that her hospitalizations have become less frequent and Minney has experienced long periods of stabilization while in compliance with her medication, the ALJ did not err by declining to adopt this part of Dr. Safdar's and Levi's opinions.

With regard to the severity of her limitations with concentration, persistence or pace, Dr. Safdar is the only source to find marked limitations in this area. He identified marked limitations in this area in his March 2, 2016, answers to medical interrogatories, *see* AR 1992, but a few days later reported only moderate limitations in this area in his March 9, 2016, opinion. AR 2067. While Dr. Lips' opinion could be read to find similar limitations, I have already found that the ALJ's decision to give little weight to this part of her opinion is supported by substantial evidence in the record as a whole. *See supra* at 13-14. Of course, all other moderate limitations identified by the treating and non-treating sources have been incorporated into the RFC. I find no error with respect to the ALJ's decision to give great weight to the opinions of the state agency psychological consultants and lesser weight to the treating source opinions (or parts of the treating source opinions) that are not supported by substantial evidence in the record as a whole.

I also find the RFC is supported by medical evidence from treating and examining sources. The ALJ need not adopt all limitations identified by such sources in order for the RFC to be considered supported by some medical evidence regarding the claimant's work-related limitations. *See Cox*, 495 F.3d at 619-20 (explaining that the RFC must be supported by "some medical evidence," but need not be proved only by medical evidence). Minney's objections related to medical evidence in support of the RFC are overruled.

## F.    Other Factors

Finally, Minney argues the ALJ gave insufficient weight to her hospitalizations, cutting and self-destructive behavior, daily activities, GAF scores, need for assistance in caring for her children and noncompliance with medication as a symptom of her mental illness.  I find that the ALJ considered these factors and provided good reasons for concluding they did not demonstrate disability.  With regard to her hospitalizations, they do not qualify as repeated episodes of decompensation of extended duration.  The ALJ also observed that many of her admissions were related to noncompliance with medication and/or relapses with alcohol.  AR 1451.  Her cutting and self-destructive behavior were similarly associated with medication noncompliance and alcohol relapse.  *Id.* at 1451-52.  Indeed, when Minney regularly took her medications, her condition improved and she was better able to manage situational stressors.  *Id.* at 1452.

While courts have recognized that noncompliance with medications may be a symptom of the mental impairments themselves, *see Pate-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009), the ALJ here did not rely solely on Minney's noncompliance as a reason for discrediting her allegations of disability.  He also relied on the medical evidence, which he reasonably concluded supported only moderate limitations and Minney's activities, which he reasonably concluded did not demonstrate disability, among other factors.  While there is certainly evidence in the record that could support a finding of disability, my role is not to reweigh the evidence.  *See Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) ("[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.").  Because I find the ALJ's decision is supported by substantial evidence in the record as a whole, despite these considerations that Minney argues should have been given greater weight, this objection is overruled as well.

## V.     CONCLUSION

For the reasons set forth herein:

1.     Plaintiff Jennifer Minney's objections (Doc. No. 15) to the Report and Recommendation are **overruled**;

2.     **I accept** Chief United States Magistrate Judge C.J. Williams' Report and Recommendation (Doc. No. 14) without modification.  *See* 28 U.S.C. § 636(b)(1).

3.     Pursuant to Judge Williams' recommendation:

   a.     The Commissioner's determination that Minney was not disabled is **affirmed**; and

   b.     Judgment shall enter against Minney and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 1st day of February, 2018.

_____
Leonard T. Strand, Chief Judge